**Kay HOLLINGER; Richard Llewelyn Jones; Edward E. Nissen; Judy D'Arcy; K–Judy, Ltd., Plaintiffs–Appellants,**

**v.**

**TITAN CAPITAL CORP.; Emil Wilkowski; Painter Financial Group, Ltd., Defendants–Appellees.**

No. 87–3837.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 22, 1990.

Decided Sept. 27, 1990.

As Amended on Denial of Rehearing Nov. 13, 1990.

**1566**

Peter B. Camp, Seattle, Wash., for plaintiffs-appellants.

Christopher B. Wells, Lane, Powell, Moss & Miller, Seattle, Wash., for defendant-appellee, Titan Capital Corp.

James S. Scott and James M. Shaker, Scott & Scott, Yakima, Wash., for defendant-appellee Painter Financial Group, Ltd.

Paul Gonson, S.E.C., Washington, D.C., for amicus curiae, S.E.C.

W. Reese Bader and Barbara Moses, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for amicus curiae, Securities Industry Ass'n.

Before GOODWIN, Chief Judge, SCHROEDER, ALARCON, NORRIS, NELSON, CANBY, HALL, WIGGINS, BRUNETTI, THOMPSON, and RYMER, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Emil Wilkowski, a dishonest securities salesman, embezzled money entrusted to him by four clients. As a result, Wilkowski was convicted of criminal securities fraud and grand theft. In this civil action for alleged violations of federal securities and state laws, the victimized investors seek to recover their losses from a brokerage firm and a financial counseling firm with which Wilkowski was associated. The district court granted summary judgment to both defendants, which plaintiffs now appeal.

On appeal, the panel called *sua sponte* for the case to be heard *en banc* to review various questions of Ninth Circuit securities law raised by this case. They are as follows:

1. What standard of recklessness meets the scienter requirement for a claim under § 10(b) and Rule 10b–5? [1]

2. Is a broker-dealer a "controlling person" with respect to its registered representatives within the meaning of § 20(a) of the 1934 Act? [2] And does plaintiff or defendant bear the burden of proving the good faith exception to controlling person liability under § 20(a)?

3. May broker-dealers be held vicariously liable under the common law doctrine of respondeat superior for securities law violations committed by their registered representatives?

We will address each of these questions in the course of considering appellants' various claims under the federal securities laws.

---

1. Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.-10b–5.

2. Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a).

I

Defendant/appellee Painter Financial Group, Ltd. ("Painter") was formed in May 1983 to provide financial counseling and to sell insurance to individuals and small businesses. Shortly thereafter, Emil Wilkowski rented space in Painter's office in Bellevue, Washington, from which he sold insurance and counseled individuals as a Painter representative. During the summer of 1983, Wilkowski met appellants Judy D'Arcy and Kay Hollinger, two business partners who were seeking financial advice. Wilkowski assisted them with a real estate transaction and was soon doing their bookkeeping, advising them on tax matters, and offering them investment advice.

In November 1983, Wilkowski and several other Painter representatives in the Bellevue office applied to the National Association of Securities Dealers ("NASD") for registration as securities salesmen for defendant/appellee Titan Capital Corporation ("Titan"), a registered broker-dealer firm regulated by the Securities and Exchange Commission ("SEC") and by the NASD. Sales representatives of broker-dealers must be registered with the NASD if the broker-dealer is a member of this self-regulatory organization.

When Wilkowski filled out his application for registration with the NASD, he answered "no" to questions asking whether he had ever willfully made a false statement, been the subject of a major legal proceeding, or been convicted or pleaded guilty to a felony. He supplied a photo and fingerprints as requested. The NASD registered Wilkowski as a securities salesman for Titan on December 12, 1983, and on January 26, 1984, Wilkowski entered into a contract in which Titan authorized him to engage in the securities business as a registered representative of Titan, operating out of Painter's office in Bellevue. That office became a Titan branch office: Titan provided Wilkowski with business cards and stationery and required the office to display a sing with Titan's logo.

As part of its usual registration process, the NASD requested the FBI to run a fingerprint check on Wilkowski. The FBI report, which was not completed until after the NASD had approved Wilkowski's registration, revealed that he had pleaded guilty in 1972 to three counts of felony forgery, for which he received a five-year suspended sentence. The NASD immediately sent a copy of the rap sheet to Titan and requested that Titan return to the NASD a written statement from Wilkowski, providing details about the conviction and an explanation of his failure to disclose the information on the registration form.

When Titan asked Wilkowski for an explanation, he responded with a letter explaining that he believed that pursuant to his plea agreement, his forgery conviction would be expunged upon his making restitution of $16,000. Without saying so explicitly, Wilkowski gave the impression that he had in fact made restitution by indicating that he believed the conviction had been removed from his record before he prepared the application for the NASD. Along with this explanation, Wilkowski submitted a new application form, on which he disclosed the forgery conviction. The NASD did not revoke Wilkowski's registration and Titan did not terminate him as a registered representative. Painter, however, did terminate Wilkowski as a financial counselor.

During the time that Wilkowski worked as a registered representative of Titan, he received funds from appellants to invest. Wilkowski legitimately invested some of the funds in securities through Titan. Sometimes, however, Wilkowski instructed appellants to make the checks payable to him personally, and they complied. Rather than investing these funds, Wilkowski diverted them for his own use. He used Titan stationery to generate bogus receipts and financial statements that indicated that the stolen funds had been used to purchase securities and mutual funds through Titan. Ultimately, Wilkowski's activities were discovered and he was convicted of criminal securities fraud and grand theft.

In this civil action, appellants seek to recover their losses under various anti-fraud provisions of the federal securities laws and under state law. The district

court awarded summary judgment to both Titan and Painter on all of appellants' federal claims and dismissed appellants' pendent state claims.[3] We affirm summary judgment in favor of Painter on all federal claims. We affirm summary judgment in favor of Titan on all federal claims, except three: 1) the claim that Titan is liable for Wilkowski's wrongdoing as a "controlling person" under § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a); 2) the claim that Titan is liable as a "controlling person" under § 15 of the Securities Act of 1933 Act ("1933 Act"), 15 U.S.C. § 77o[4]; and 3) the claim that Titan is liable as Wilkowski's employer under the common law theory of respondeat superior.

We address appellants' various theories of liability under the federal securities laws in turn. In doing so, we make an independent determination whether appellees were entitled to summary judgment. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c).

## II

### A

Appellants claim that Titan is primarily liable under § 10(b) of the 1934 Act and Rule 10b–5 for failing to disclose to investors Wilkowski's prior forgery conviction.[5] Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b–5, which implements § 10(b), makes it unlawful:

**3.** Appellants obtained a default judgment against Wilkowski, who was also named as a defendant in the civil suit.

**4.** The standards for liability as a controlling person under § 15 are not materially different from the standards for determining controlling person liability under § 20(a). *See Buhler v. Audio Leasing Corp.,* 807 F.2d 833, 835 (9th Cir.1987).

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact, or *to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.*

17 C.F.R. § 240.10b–5 (emphasis added). Appellants do not contend that Titan employed "any device, scheme or artifice to defraud" the people who invested with Wilkowski; rather, appellants proceed on the theory that Titan should be liable for failing to disclose Wilkowski's prior forgery conviction.

In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976), the Supreme Court held that scienter is a necessary element in an action for damages under § 10(b) and Rule 10b–5. The Court defined scienter as "a mental state embracing intent to deceive, manipulate, or defraud." *Id.* at 194 n. 12, 96 S.Ct. at 1381 n. 12. The Court adopted the view that the language of § 10(b), in particular the terms "manipulative," "device," and "contrivance," revealed an unambiguous intent on the part of Congress to proscribe only "knowing or intentional misconduct." *Id.* at 197–99, 96 S.Ct. at 1382–83; *see also Aaron v. SEC,* 446 U.S. 680, 690, 100 S.Ct. 1945, 1952, 64 L.Ed.2d 611 (1980). Although the Court acknowledged that in some areas of the law recklessness is considered to be a form of intentional conduct, the Court reserved the question whether reckless behavior is actionable under § 10(b) and Rule 10b–5. *See* 425 U.S. at 194 n. 12, 96 S.Ct. at 1381 n. 12.

■ Our circuit, however, along with ten other circuits,[6] has held that recklessness

**5.** We address appellants' claims against Painter separately. *See infra* Section VI.

**6.** *See, e.g., Woods v. Barnett Bank of Fort Lauderdale,* 765 F.2d 1004, 1010 (11th Cir.1985); *Hackbart v. Holmes,* 675 F.2d 1114, 1117–18 (10th Cir.1982); *Dirks v. SEC,* 681 F.2d 824, 844 & n. 27 (D.C.Cir.1982), *rev'd on other grounds,* 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983); *Stokes v. Lokken,* 644 F.2d 779, 783 (8th

may satisfy the element of scienter in a civil action for damages under § 10(b) and Rule 10b–5. *E.g., Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir.1984); *Nelson v. Serwold,* 576 F.2d 1332, 1337–38 (9th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). We continue to adhere to that view.

In our past decisions, we declined to define recklessness; instead, we tried to delineate its contours. We have said that recklessness is a lesser form of intent rather than a greater degree of negligence, *see Vucinich v. Paine, Webber, Jackson & Curtis Inc.,* 739 F.2d 1434, 1435 (9th Cir. 1984) (citations omitted), and that it involves conduct that is "more culpable than mere negligence," but with an intent less culpable than "deliberately and cold-bloodedly ... conceal[ing] information." *Nelson v. Serwold,* 576 F.2d at 1337. At times, however, we have articulated a standard of recklessness that is not clearly distinguishable from negligence. *See, e.g., Keirnan v. Homeland, Inc.,* 611 F.2d 785, 788 (9th Cir.1980) (*scienter* requirement satisfied if defendant "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [defendant] could have done so without extraordinary effort"); *see also Burgess v. Premier Corp.,* 727 F.2d 826, 832 (9th Cir.

1984); *Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278, 1283 (9th Cir.1982).

■ Today we adopt the standard of recklessness articulated by the Seventh Circuit in *Sundstrand Corp. v. Sun Chem. Corp.,* 553 F.2d 1033, 1044–45 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977),[7] and adhered to, albeit with some variation, by a majority of circuits.[8] In *Sunstrand,* the Seventh Circuit held that "a reckless omission of material facts upon which the plaintiff put justifiable reliance in connection with a sale or purchase of securities is actionable under Section 10(b) as fleshed out by Rule 10b–5." *Id.* at 1044. The *Sunstrand* court quoted with approval a lower court's definition of recklessness in the context of omissions:

> [R]eckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Id.* at 1045 (quoting *Franke v. Midwestern Okla. Dev. Auth.,* 428 F.Supp. 719, 725 (W.D.Okla.1976), *vacated on other grounds,* 619 F.2d 856 (10th Cir.1980)). The *Sunstrand* court went on to explain that "the danger of misleading buyers

---

Cir.1981); *Broad v. Rockwell Int'l Corp.,* 642 F.2d 929, 961–62 (5th Cir.) (en banc), *cert. denied,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981); *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 193 (3d Cir.), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1981); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1024 (6th Cir.1979); *McLean v. Alexander,* 599 F.2d 1190, 1197 (3d Cir.1979); *Cook v. Avien, Inc.,* 573 F.2d 685, 692 (1st Cir.1978) (assumed, but not decided, that "recklessness" sufficient); *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 46 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Sunstrand Corp. v. Sun Chem. Corp.,* 553 F.2d 1033, 1044 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977).

Although the Fourth Circuit has not explicitly found recklessness to be sufficient, district courts in that circuit have so held. *See In re EPIC Mortgage Ins. Litig.,* 701 F.Supp. 1192, 1250 (E.D.Va.1988) (citing cases), *aff'd in part, rev'd in part on other grounds sub nom. Foremost*

Guar. Corp. v. Meritor Sav. Bank, 910 F.2d 118 (4th Cir.1990).

7. Although the SEC urges us to adopt a standard of recklessness based on the common law of fraud's standard of "conscious indifference," we prefer the *Sunstrand* standard of recklessness, in part because it allows us to bring greater uniformity to the law of the various circuits.

8. *See, e.g., Hackbart v. Holmes,* 675 F.2d 1114, 1118 (10th Cir.1982); *SEC v. Carriba Air, Inc.,* 681 F.2d 1318, 1324 (11th Cir.1982); *Broad v. Rockwell Int'l Corp.,* 642 F.2d 929, 961–62 (5th Cir.), *cert. denied,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981); *McLean v. Alexander,* 599 F.2d 1190, 1197–98 (3d Cir.1979); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1025 (6th Cir.1979); *Cook v. Avien, Inc.,* 573 F.2d 685, 692 (1st Cir.1978); *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 46–47 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

must be actually known or so obvious that any reasonable man would be legally bound as knowing, and the omission must derive from something more egregious than even 'white heart/empty head' good faith." *Id.* (footnotes omitted); *accord Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir.) (Reckless conduct is conduct that is "highly unreasonable" and represents "an extreme departure from the standards of ordinary care ... to the extent that the ... defendant must have been aware of it.") (quoting *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 793 (7th Cir.1977)), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698.

In adopting the *Sunstrand* standard of recklessness, we put to rest the "flexible duty standard" [9] announced in *White v. Abrams,* 495 F.2d 724, 735–36 (9th Cir. 1974). As noted by Judge Ferguson in his special concurrence in *Spectrum Fin. Cos. v. Marconsult, Inc.,* 608 F.2d 377, 382 (9th Cir.1979) (Ferguson, J., concurring), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980), the flexible duty test was expressly disapproved in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), because it is essentially a negligence standard. Even after the Supreme Court had rejected *White's* flexible duty test, *see* 425 U.S. at 193 n. 12, 96 S.Ct. at 1381 n. 12,[10] the test continued to resurface in our cases.[11] But as Judge Ferguson rightly pointed out, the flexible duty test is a negligence test "designed to compartmentalize and simplify a negligence inquiry," *Spectrum,* 608 F.2d at 385, and *Hochfelder* rejected negligence in favor of a scienter requirement.

In applying the *Sunstrand* test to the facts of this case,[12] the essential inquiry becomes: Was Titan's failure to disclose Wilkowski's eleven-year old forgery conviction highly unreasonable and did it constitute an extreme departure from standards of ordinary care?

**B**

■ We start our inquiry by considering what Titan did know. In February, 1984, less than a month after the NASD had registered Wilkowski as a securities salesman, Titan learned from the NASD that Wilkowski had failed to disclose a prior conviction on his application. When Titan received Wilkowski's rap sheet, it learned that eleven years earlier Wilkowski had received a suspended five-year sentence for felony forgery. When Titan asked Wilkowski to explain, Wilkowski gave what appeared on its face to be a plausible explanation:[13] that he believed that his record had

---

9. The "flexible duty" test required courts to consider the following factors:
(1) the relationship of defendant to plaintiff; (2) defendant's access to the information as compared to that of plaintiff; (3) defendant's benefit derived from the relationship; (4) defendant's awareness of whether plaintiff was relying on their relationship in making his or her investment decisions; and (5) defendant's activity in initiating the transaction in question.
*Zweig v. Hearst Corp.,* 594 F.2d 1261, 1268 (9th Cir.1979) (paraphrasing *White v. Abrams,* 495 F.2d 724, 735–36 (9th Cir.1974)).

10. As Judge Ferguson pointed out in his concurring opinion in *Spectrum,* the Supreme Court listed the *White* decision "as an example of the negligence standard it was repudiating." *Spectrum,* 608 F.2d at 383.

11. *See, e.g., Kidwell ex rel. Penfold v. Meikle,* 597 F.2d 1273, 1294 (9th Cir.1979); *Zweig,* 594 F.2d at 1268 n. 13; *Crocker–Citizens Nat'l Bank v. Control Metals Corp.,* 566 F.2d 631, 636 n. 2 (9th Cir.1977).

12. The parties dispute whether Titan's failure to disclose Wilkowski's forgery conviction is a material fact. The district court held that the omission was not material. We find it arguable, however, that a reasonable investor would consider this information important to her decision to do business with a registered representative. *See SEC v. Rogers,* 790 F.2d 1450, 1458 (9th Cir.1986) (Information is material "if 'there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision.'") (quoting *Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* 769 F.2d 561, 565 (9th Cir. 1985)). Therefore, we will assume, without deciding, that a jury could reasonably find the omission to be material, and we will go on to decide whether Titan acted with scienter.

13. Wilkowski's letter said in relevant part:
In the proceedings there was a plea bargaining situation which reduced my situation to a count of forgery to which I plead [sic] guilty. After negotiating the situation, and a presentencing report had been entered, I was placed

been expunged after five years under the terms of his plea agreement.[14]

Titan also knew the NASD, after reviewing all the information that Titan had on Wilkowski, decided not to revoke his registration as a registered representative. Titan was also aware that the NASD had not imposed any restriction or conditions on Wilkowski's license to sell securities, although it was within its power to do so.

Titan further knew that an eleven-year old forgery conviction was not considered disqualifying by either Congress or the NASD for purposes of determining whether a person should be licensed to work as a salesperson in the securities industry. As part of the 1934 Act, Congress provided that any person who met all of the requirements imposed by the NASD and who was not statutorily disqualified could be registered without restrictions as a representative of a broker-dealer to sell securities. *See* 15 U.S.C. § 78*o* (b)(1). Congress expressly provided that a forgery conviction was a statutory disqualification only if it occurred within ten years preceding the application registration. 15 U.S.C. § 78*o* (b)(4)(B)(iii). Under its rules, the NASD will give an unconditional registration to an applicant who is not statutorily disqualified and who "passes the applicable qualification examination, provides all necessary information and pays all required fees." Aff't of Andrew McR. Barnes, Associate General Council of the NASD, Clerk's Record ("C.R.") 80:1. The NASD may either refuse to register a person who is subject to statutory disqualification or impose special conditions on the registration. *Id.* at 80:3. Such conditional registrations typically require the sponsoring broker-dealer to engage in increased supervision of the registered representative's work. *Id.* at 80:3. Wilkowski, who was not subject to a statutory disqualification, was granted an unconditional registration. Although the NASD's unconditional registration did not mean that it had certified Wilkowski to be a trustworthy securities salesman,[15] the fact that Wilkowski was registered unconditionally and that the registration was neither revoked nor conditioned after the forgery conviction surfaced is relevant to the question of whether Titan acted recklessly when it omitted to inform appellants of the conviction.

On the record, we hold that appellants have failed to make "a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When we view Wilkowski's conviction in light of Congress' decision not to make an eleven-year old forgery conviction a statutory disqualification and the NASD's decision not to revoke or condition Wilkowski's registration, we

upon probation, provided I made restitution of $16,843.49. At the time restitution was completed, the court was to be petitioned to remove the guilty plea thus removing the record of this ever having occurred. At that time, I could actually state that I had not been convicted of any of the above.

. . . .

I was under the mistaken impression the matter was removed—which obviously is not the case.
Record Excerpts ("R.E.") at 321–22.

**14.** There is no evidence that at the time of Wilkowski's defalcations, Titan knew that Wilkowski had failed to make the restitution required by the plea agreement.

**15.** We do not agree with appellants that Barnes' affidavit supports their contention that Titan had a duty to disclose Wilkowski's forgery conviction to his clients. Barnes merely explained in his affidavit that the fact that the NASD had given Wilkowski an unconditional registration did not settle the question of whether Titan should have disclosed the conviction. C.R. 80:3. Barnes asserts that by registering Wilkowski, the NASD did not represent to Titan or to the public that Titan "should have hired Wilkowski ... or [that] Titan [need not] have told the customers about Wilkowski's conviction." *Id.* at 80:3. Instead, under the NASD's Rules of Fair Practice, to which all broker-dealers subscribe, "[f]inal responsibility for proper supervision ... rest[s] with the member." *Id.* at 80:2. We agree that the NASD's decision to give Wilkowski an unconditional registration did not mean that the NASD approved of Titan's decision not to disclose the conviction. Nonetheless, as we discuss in the text, the NASD's decision to register Wilkowski without placing any supervision or other conditions on his registration tends to undermine appellants' argument that Titan acted recklessly.

conclude that the evidence would be insufficient to support a finding of fact that the conviction created a highly unreasonable risk that should have been obvious to Titan. A broker-dealer is not required to inform investors of every negative fact it knows about its registered representatives. It is a matter of judgment whether the negative facts create such a highly unreasonable risk of untrustworthiness that it would constitute recklessness. Here, we conclude that Titan's failure to disclose Wilkowski's eleven-year old conviction did not create such an unreasonable risk to investors that Titan's failure to disclose the conviction was an extreme departure from the standard of ordinary care.

In the final analysis, Titan may have made an error in judgment in failing to disclose Wilkowski's conviction to his clients. Indeed, it is arguable that a fair-minded jury might reasonably find that the failure to disclose the conviction constituted negligence. But in our view, a fair-minded jury could not find that Titan acted recklessly under the *Sunstrand* standard that we adopt today. Thus, we hold that appellants have failed to raise a triable issue of fact as to their claim that Titan acted with the requisite scienter under § 10(b) and Rule 10b–5.

■ Appellants also claim that Titan should be primarily liable under § 10(b) and Rule 10b–5 for failing to inform them that Wilkowski had not made full restitution as of March 1984 to the individuals he had defrauded, although the terms of his plea agreement required restitution to be made by 1977. We also reject this claim. The only evidence that appellants point to is Wilkowski's letter to Titan and the NASD, in which he explained his understanding of the plea agreement. *See* R.E. at 321–22. Even when we view that document in the light most favorable to appellants, we do not believe that a fair-minded jury could infer from it that Titan knew that Wilkowski had not made restitution. Thus, appel-

lants have failed to raise a triable issue as to their claim that Titan knew that Wilkowski had failed to make full restitution as of March 1984.

In sum, we affirm the district court's order granting Titan summary judgment on appellants' § 10(b) and Rule 10b–5 claim.

### III

We next consider whether Titan can be held vicariously liable as a "controlling person" under § 20(a) of the 1934 Act for Wilkowski's violations of the securities laws. Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

To hold Titan liable under § 20(a), appellants must first establish that Titan was a "controlling person" within the meaning of the statute.[16]

The district court interpreted the law of this circuit as requiring appellants to prove that Titan exercised "actual power or influence" over Wilkowski's fraudulent dealings and that Titan was a "culpable participant" in the alleged illegal activity in order to establish that Titan was a "controlling person" for the purpose of § 20(a). R.E. at 32 (citing *Buhler*, 807 F.2d at 835). The district court, after applying this test, granted Titan summary judgment on appellants' § 20(a) claim. First, the court reasoned that Titan had no "power or influence" over Wilkowski because Wilkowski was an independent contractor and Titan did not exercise any control over Wilkowski's de-

---

**16.** The SEC has defined "control" to mean: [T]he possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, wheth-er through ownership of voting securities, by contract, or otherwise.
17 C.F.R. § 230.405.

falcation of funds; did not benefit from the defalcation of funds; and did not authorize Wilkowski to receive personal checks. *See id.* Second, the court concluded that because Titan and Wilkowski had contractually agreed that Wilkowski would be an independent contractor, Titan had no duty to supervise unauthorized and unknown transactions and therefore could not have been a "culpable participant" in Wilkowski's misdeeds. *See id.* at 34. In applying the language in *Buhler*, the District Court made the question of whether Titan controlled Wilkowski turn on the particular business arrangement of the parties.

### A

█ The SEC, as amicus curiae, joins appellants in arguing that the district court erred in holding that Titan could not be held vicariously liable as a "controlling person" under § 20(a) for Wilkowski's misdeeds. We agree. Today we hold that a broker-dealer is a controlling person under § 20(a) with respect to its registered representatives.

First, the SEC notes that this circuit and other circuits have interpreted the securities laws to impose a duty on broker-dealers to supervise their registered representatives.[17] In *Zweig*, we noted that Congress adopted § 20(a) in an attempt to protect the investing public from representatives who were inadequately supervised or controlled:

> Purchasers of securities frequently rely heavily for investment advice on the broker-representative handling the purchaser's portfolio. Such representatives traditionally are compensated by commissions in direct proportion to sales. The opportunity and temptation to take ad-

vantage of the client is ever present. To ensure the diligence of supervision and control, the broker-dealer is held vicariously liable if the representative injures the investor through violations of Section 10(b) or the rules thereunder promulgated. The very nature of the vast securities business, as it has developed in this country, militates for such a rule as public policy and would seem to suggest strict court enforcement.

521 F.2d at 1135.

The SEC argues that the representative/broker-dealer relationship is necessarily one of controlled and controlling person because the broker-dealer is required to supervise its representatives. This requirement arises from § 15 of the 1934 Act,[18] which the SEC has interpreted as authority to impose sanctions on broker-dealers who have failed to provide adequate supervision of their registered representatives. *See, e.g., In re Reynolds & Co.*, 39 S.E.C. 902, 916–17 (1960); *In re Bond & Goodwin, Inc.*, 15 S.E.C. 584, 601 (1944).

Second, the SEC argues that as a practical matter the broker-dealer exercises control over its registered representatives because the representatives need the broker-dealer to gain access to the securities markets. Again, the SEC points to § 15(a) of the 1934 Act, which provides that a person cannot lawfully engage in the securities business unless he or she is either registered with the NASD as a broker-dealer or as a person associated with a broker-dealer.[19] Because a sales representative must be associated with a registered broker-dealer in order to have legal access to the trading markets, the broker-dealer al-

---

**17.** *See, e.g., Zweig v. Hearst Corp.*, 521 F.2d 1129, 1134–35 (9th Cir.), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975); *accord Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111, 1120 (5th Cir.1980); *Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 716 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980).

**18.** Section 15(b)(4) provides:

> The Commission, by order, shall censure, place limitations on ..., suspend ... or revoke the registration of any broker or dealer

if it finds ... that such broker or dealer ... (E) ... has failed reasonably to supervise, with a view to preventing violations ... [of the securities laws], another person who ... is subject to his supervision.

15 U.S.C. § 78*o*(b)(4).

**19.** Section 15(a) of the 1934 Act provides:

> (1) it shall be unlawful for any ... person not associated with a [registered] broker or dealer ... to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in ... any security.

█

ways has the power to impose conditions upon that association, or to terminate it. The broker-dealer's ability to deny the representative access to the markets gives the broker-dealer effective control over the representative at the most basic level. Moreover, because the broker-dealer is required by statute to establish and enforce a reasonable system of supervision to control its representatives' activities,[20] the broker-dealer necessarily exerts ongoing control over the types of transactions made by the representative and her ways of handling clients' accounts.

In contrast to the SEC's position, the district court's reasoning implied that even if Titan had the power to deny Wilkowski access to the trading markets or was required by statute to supervise his securities transactions, Titan still should not be considered a controlling person under § 20(a) because Wilkowski was an independent contractor, not an agent.[21] We find no support in the statutory scheme for such a restrictive definition of controlling person that would exclude independent contractors, and thus, we do not distinguish for purposes of § 20(a) between registered representatives who are employees or agents and those who might meet the definition of independent contractors.

In sum, § 20(a) of the Act provides that a person cannot lawfully engage in the securities business unless he is either registered as or associated with a broker-dealer, and we see no basis in the statutory scheme to distinguish between those associated persons who are employees and agents on the one hand, and those who are independent contractors on the other. To exclude from the definition of controlling person those registered representatives who might technically be called indepen-

dent contractors would be an unduly restrictive reading of the statute and would tend to frustrate Congress' goal of protecting investors. Thus, we reject the argument that broker-dealers can avoid a duty to supervise simply by entering into a contract that purports to make the representative, who is not himself registered under the Act as a broker-dealer, an "independent contractor." [22]

To summarize, we hold that a broker-dealer is a controlling person under § 20(a) with respect to its registered representatives. This result is consistent with *Zweig*, where we said that "[t]o ensure the diligence of supervision and control, the broker-dealer is held vicariously liable if the representative injures the investor through violations of Section 10(b) or the rules thereunder promulgated." 521 F.2d at 1135. Thus, for appellants to establish that Titan was a controlling person, they need only show that Wilkowski was not himself a registered broker-dealer but was a representative employed by or associated with a registered broker-dealer. This they have done. The facts are not in dispute that Wilkowski was a registered representative associated with Titan. Accordingly, Titan was, as a matter of law, a "controlling person" under § 20(a) with respect to Wilkowski.

## B

Titan also argues that it was not a controlling person because it was not a "culpable participant" in Wilkowski's deeds as required by *Buhler*, 807 F.2d at 835–36, and *Christoffel v. E.F. Hutton & Co.*, 588 F.2d 665, 668–69 (9th Cir.1978).

The district court, citing earlier cases from our circuit, agreed with Titan and

15 U.S.C. § 78*o*(a).

**20.** Section 15(b) of the 1934 Act defines reasonable supervision as:
established procedures, and a system for applying such procedures, which would reasonably be expected to prevent and detect, insofar as practicable, any ... violation [of the Act] by [an associated person].
15 U.S.C. § 78*o*(b)(4)(E)(i).

**21.** This argument was never advanced by Titan. Titan acknowledged a duty to supervise Wilkowski and argued that its supervision of him was adequate.

**22.** The contract between Titan and Wilkowski provided:
7. *Contractor's Freedom from Company Controls.* The Company has no right to control or direct the Contractor in the sales of securities, not only as to the result to be accomplished by the work but also as to the details and means by which the result is accomplished, excepting [oversight and instructions required to comply with securities laws].... [T]he Contractor is completely free from the will and control of the Company not only as to what shall be done, but how it shall be done. R.E. at 311–12.

ruled that a broker-dealer is not a "controlling person" under § 20(a) unless the plaintiff proves that the broker-dealer was a "culpable participant" in the violation.[23]

Today, however, we hold that a plaintiff is *not* required to show "culpable participation" to establish that a broker-dealer was a controlling person under § 20(a).[24] The statute does not place such a burden on the plaintiff. Section 20(a) provides that a "controlling person" is liable "unless [he] acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). Thus, the statute premises liability solely on the control relationship, subject to the good faith defense. According to the statutory language, once the plaintiff establishes that the defendant is a "controlling person," then the defendant bears the burden of proof to show his good faith.[25]

Today we return to what had once been the law of our circuit, namely that § 20(a) requires the defendant to prove his good faith. In *Safeway Portland Employees' Federal Credit Union v. C.H. Wagner & Co., Inc.*, 501 F.2d 1120, 1124 (9th Cir. 1974), in discussing the analogous controlling person provision of the 1933 Act, we had said that "[t]hose claiming the exemption have the burden of proving it." In *Buhler*, *Kersh*, and *Christoffel*, however, we placed on the plaintiff the burden of disproving the defendant's good faith. In *Orloff v. Allman*, 819 F.2d 904, 906 n. 1 (9th Cir.1987), we noted the shift: *"Buhler*

and *Kersh II* rely upon *Christoffel v. E.F. Hutton & Co.* ..., which overlooked prior circuit law." Now, we make clear that in an action based on § 20(a), the defendant who is a controlling person, and not the plaintiff, bears the burden of proof as to defendant's good faith. Thus, a plaintiff need not make a showing as to defendant's culpable participation; rather, a defendant has the burden of pleading and proving his good faith.

To summarize, a broker-dealer controls a registered representative for the purposes of § 20(a). By recognizing this control relationship, we do not mean that a broker-dealer is vicariously liable under § 20(a) for all actions taken by its registered representatives. Nor are we making the broker-dealer the "insurer" of its representatives, which is a result we rejected in *Christoffel* as going beyond the scope of the vicarious liability imposed upon a broker-dealer by § 20(a). The mere fact that a controlling person relationship exists does not mean that vicarious liability necessarily follows. Section 20(a) provides that the "controlling person" can avoid liability if she acted in good faith and did not directly or indirectly induce the violations. By making the good faith defense available to controlling persons, Congress was able to avoid what it deemed to be an undesirable result, namely that of insurer's liability, and instead it made vicarious liability under § 20(a) dependent upon the broker-dealer's good faith.[26]

**23.** *See Buhler*, 807 F.2d at 835–36; *Kersh v. General Council of Assemblies of God*, 804 F.2d 546, 549–50 (9th Cir.1986); *see also Christoffel*, 588 F.2d at 669 (adopting "participation" requirement, but not "culpable participation" requirement).

**24.** Today's holding, however, is reached in the context of the broker-dealer/registered representative relationship exclusively. We do not address the question of whether in other contexts the first prong of the *Buhler* and *Christoffel* test for determining a "controlling person," namely that of power and influence, may be applied. A person may, of course, be a controlling person without being a broker-dealer. *See, e.g., Zweig*, 521 F.2d at 1132.

**25.** We join several other circuits in holding that the defendant bears the burden of proving his

good faith. *See, e.g., Paul F. Newton & Co. v. Texas Commerce Bank*, 630 F.2d 1111, 1120 (5th Cir.1980); *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir.), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1170 (D.C. Cir.1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); *Fey v. Walston & Co., Inc.*, 493 F.2d 1036, 1051–52 (7th Cir.1974); *Mader v. Armel*, 461 F.2d 1123, 1126 (6th Cir.), *cert. denied*, 409 U.S. 1023, 93 S.Ct. 465, 34 L.Ed.2d 315 (1972).

**26.** The broker-dealer may also, of course, rely on a contention that the representative was acting outside of the broker-dealer's statutory "control." For example, Titan could argue that when appellants entrusted their money to Wilkowski they were not reasonably relying upon

## C

Contrary to the district court's ruling, the broker-dealer cannot satisfy its burden of proving good faith merely by saying that it has supervisory procedures in place, and therefore, it has fulfilled its duty to supervise. A broker-dealer can establish the good faith defense only by proving that it "maintained and enforced a reasonable and proper system of supervision and internal control." *Zweig*, 521 F.2d at 1134–35; *see also Paul F. Newton & Co.*, 630 F.2d at 1120 (broker-dealer must show it "diligently enforce[d] a proper system of supervision and control"). Accordingly, the district court erred in ruling that because "Titan had adopted rules for accepting investment payments and for supervising a contractor's compliance with securities laws and regulations," it had satisfied its duty to supervise. R.E. at 34. Should Titan choose to rely upon the good faith defense, then it must carry its burden of persuasion that its supervisory system was adequate and that it reasonably discharged its responsibilities under the system. The evidence below raised material issues of fact as to whether Titan's supervision of Wilkowski was sufficient to entitle Titan to the good faith defense. Summary judgment was, accordingly, improper.

## IV

Appellants also claim on appeal that the district court erred in granting summary judgment to Titan on appellants' claim that Titan was secondarily liable for Wilkowski's § 10(b) violation under the common law theory of respondeat superior. Although it has been the law of our circuit that § 20(a) "supplants vicarious liability of an employer for the acts of an employee applying the respondeat superior doctrine," *Christoffel*, 588 F.2d at 667 (citing *Zweig*, 521 F.2d at 1132–33; *Kamen & Co. v. Paul H. Aschkar & Co.*, 382 F.2d 689, 697 (9th Cir.1967), *cert. dismissed*, 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85 (1968)); *see also Buhler*, 807 F.2d at 835 n. 4 ("we continue to adhere to our prior holdings that the common law is supplanted by sections 15 and 20"), we now join several other circuits [27] in holding that § 20(a) was intended to supplement, and not to supplant, the common law theory of respondeat superior

---

him as a registered representative of Titan, but were placing the money with Wilkowski for purposes other than investment in markets to which Wilkowski had access only by reason of his relationship with broker-dealer Titan.

27. *See, e.g., In re Atlantic Fin. Management, Inc.*, 784 F.2d 29, 32–34 (1st Cir.1986), *cert. denied*, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877 (1987); *Commerford v. Olson*, 794 F.2d 1319, 1322–23 (8th Cir.1986); *Marbury Management*, 629 F.2d at 712–16 (2d Cir.); *Paul F. Newton & Co.*, 630 F.2d at 1115–19 (5th Cir.); *Holloway v. Howerdd*, 536 F.2d 690, 694–95 (6th Cir.1976); *Kerbs v. Fall River Indus., Inc.*, 502 F.2d 731, 740–41 (10th Cir.1974).

The Third Circuit has held that respondeat superior "should not be widely expanded in the area of federal securities regulation," but that it should be available against broker-dealers and accounting firms in view of "the public trust of the firms involved, and the duty to supervise arising therefrom." *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 182–83 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *see also Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 884–86 (3d Cir.1975).

The Fourth Circuit law is in a state of confusion. *Compare Carras v. Burns*, 516 F.2d 251 (4th Cir.1975) *with Carpenter v. Harris, Upham & Co.*, 594 F.2d 388 (4th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). One district court thinks that *Carpenter* overruled *Carras sub silentio. Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303, 1311 (E.D.Va. 1981). Two other district courts, disagreeing, distinguished *Carpenter* and continued to follow *Carras. Frankel v. Wyllie & Thornhill, Inc.*, 537 F.Supp. 730, 740–42 (W.D.Va.1982); *Baker v. Wheat First Sec.*, 643 F.Supp. 1420, 1425–27 (S.D.W.Va.1986).

The Seventh, Eleventh, and District of Columbia Circuits have not directly spoken to the issue.

Although the dissent suggests that the Sixth Circuit in *Holloway v. Howerdd* did not apply respondeat superior to federal causes of action, but only to state law causes of action, there is no mention of any state law cause of action in that case. *Holloway v. Howerdd* 536 F.2d at 692. The district court decision, which the *Holloway* court affirmed, explicitly applied respondeat superior to a § 12(2) claim. *Id.* at 694 (the district court held that "the liability of TSI under § 12(2) was predicated upon the doctrine of respondeat superior"). Significantly, *Holloway* explicitly disagreed with the Ninth Circuit authority we overrule today. *Id.* at 695.

as a basis for vicarious liability in securities cases.[28]

In our earlier cases, we had concluded, without much explanation, that § 20(a) supplanted the doctrine of respondeat superior. For example, in *Kamen*, 382 F.2d at 697, we concluded that cases relying on respondeat superior had "no application to actions maintained under the Securities Acts." Then, in *Zweig*, 521 F.2d at 1132–33, we cited with approval our earlier decision in *Kamen*, in which we had rejected "[t]he contention that the more stringent doctrine of *respondeat superior* remained effective to establish vicarious liability." *Id.* at 1132. With no further explanation, we noted that "[t]he *Kamen* rule is well established in this circuit" and that "*Kamen* provides the controlling authority in [the *Zweig*] appeal." *Id.* More recently, in *Christoffel*, we reaffirmed, without elaboration, that it was "the established law of this circuit that section 20(a) supplants vicarious liability of an employer for the acts of an employee applying the respondeat superior doctrine." 588 F.2d at 667. In *Buhler*, 807 F.2d at 835 n. 4, we held that we would continue to abide by our prior holdings that "the common law is supplanted by sections 15 and 20." The only explanation we offered at the time was that "the securities laws in general were meant to impose liability only on culpable parties with enforceable control." *Id.*[29]

After reexamination of the issue as an en banc court, we are now satisfied that "the 'controlling person' provision of Section 20(a) was not intended to supplant the application of agency principles in securities cases, and that it was enacted to expand rather than to restrict the scope of liability under the securities laws." *Marbury Management*, 629 F.2d at 712; accord *Paul F. Newton & Co.*, 630 F.2d at 1118 (The legislative "history does not reflect any congressional intent to restrict secondary liability for violations of the acts to the controlled persons formula.").

Section 20(a), which was modelled after the controlling person provision of § 15 of the Securities Act of 1933, 15 U.S.C. § 77o, was intended "to prevent evasion" of the law "by organizing dummies who will undertake the actual things forbidden."[30] In other words, § 20(a) was intended to impose liability on controlling persons, such as controlling shareholders and corporate officers, who would not be liable under respondeat superior because they were not the actual employers. Thus, in enacting § 20(a), Congress expanded upon the common law, and in doing so, created a defense (the good faith defense) that would be available only to those who, under common law principles of respondeat superior, would have faced no liability at all.

Only if both respondeat superior and § 20(a) are available is the statutory scheme comprehensive and the public protected by the federal securities laws. "To allow a brokerage firm to avoid secondary liability simply by showing ignorance, purposeful or negligent, of the acts of its registered representative contravenes Congress' intent to protect the public, particularly unsophisticated investors, from fraudulent practices." *Paul F. Newton & Co.*, 630 F.2d at 1118–19. When both remedies are available, then the agent who personally committed the wrong is primarily liable

**28.** Respondeat superior is a common law principle of secondary liability and generally "summarizes the doctrine that a master or other principal is responsible, under certain conditions, for the conduct of a servant or other agent." Seavey, *Speculations as to "Respondeat Superior,"* Harv.Legal Essays 433 (1934). A common application of this doctrine is the liability of an employer for a tort committed by one of its employees acting within the scope of his employment, or for a misleading statement made by an employee or other agent who has actual or apparent authority. *See Restatement (Second) of Agency* §§ 219, 257, 261 (1958).

**29.** *See* Comment, *Rule 10b–5 and Vicarious Liability Based on Respondeat Superior*, 69 Calif.L.

Rev. 1513, 1519 (1981) ("[T]he exclusivity view of Section 20(a) is firmly entrenched in the law of the Ninth Circuit, yet the Court of Appeals for the Ninth Circuit has never discussed any reasoning for or against that view.").

**30.** *Stock Exchange Practices: Hearings on S. Res. 84 (72d Cong.) and S. Res. 56 and S. Res. 97 (73d Cong.) Before the Senate Comm. on Banking and Currency*, 73d Cong., 1st Sess. 6571 (1934) (statement of Thomas G. Corcoran, in the office of counsel for the Reconstruction Finance Corporation and one of the drafters of the Securities Act of 1934).

(based on proof of his actions or omissions, and on scienter when required); the principal who acts through the agent (assuming the agent is acting within the scope of his agency) is secondarily liable; and other persons who are not subject to respondeat superior but who nevertheless control the wrongdoer can be held liable under § 20(a). Because the liability of persons under § 20(a) represents an extension of liability, beyond that imposed by the common law, such persons are afforded statutory defenses not available in the principal-agent context. Controlling persons may thus avoid liability under § 20(a) by demonstrating that they acted in "good faith" within the meaning of that section.

Whether appellants will ultimately be able to hold Titan liable under either § 20(a) or respondeat superior depends on issues to be resolved on remand.[31] All that we hold today is that the district court erred in granting summary judgment to Titan on appellants' § 20(a) claim, *see* Part III–C, *supra,* and that in light of today's decision, the district court erred in concluding that "[t]he established law of the Ninth Circuit is that section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)) and section 15 of the Securities Act of 1933 (15 U.S.C. § 77*o* ) supplant[ ] the doctrine of respondeat superior." R.E. at 31. Rather, appellants may proceed on their theories of liability based on both § 20(a) and respondeat superior because it is no longer the law of this circuit that the former supplants the latter.

### V

We now turn to appellants' remaining claims against Titan under federal securities laws.

■ We reverse the district court's order granting summary judgment to Titan on appellants' claim that Titan is secondarily liable under § 15 of the 1933 Act, 15 U.S.C. § 77*o,* for Wilkowski's violations of § 12(2).[32] The district court reasoned that Titan was not a "controlling person" under § 15, and thus, could not be held vicariously liable for Wilkowski's violations of the 1933 Act. We disagree. Although § 15 is not identical to § 20(a), the controlling person analysis is the same. *See Buhler,* 807 F.2d at 835. Because we hold that Titan is a controlling person as a matter of law under § 20(a), we also hold that it is a controlling person under § 15. Titan has, of course, the same good faith defense available to it under § 15 as it has under § 20(a). *See* Part III–B, *supra.*

■ Next, we affirm the district court's order granting summary judgment to Titan on appellants' claims under § 15 of the 1934 Act, 15 U.S.C. § 78*o,* because this section does not give rise to a private right of action. *See SEC v. Seaboard Corp.,* 677 F.2d 1301, 1313–14 (9th Cir.1982). We also hold that the claims under § 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), fail for the same reason. *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 823 F.2d 1349, 1354–55 (9th Cir.1987) (en banc).

Finally, we affirm the district court's order granting summary judgment to Titan on appellants' claim that Titan was primarily liable under § 12(2) of the 1933 Act, 15 U.S.C. § 77*l,* because appellants abandoned that claim before the district court. *See* R.E. at 36.

### VI

We address appellants' claims against Painter separately. The character and basis of plaintiffs-appellants' claims against Painter were murky in the district court and remain so on appeal. Basically, appel-

---

**31.** We express no opinion on the question of whether Wilkowski is an independent contractor for respondeat superior purposes. That question turns on issues of fact to be resolved on remand.

**32.** Section 15 of the 1933 Act provides in relevant part:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under [Section 12(2) ], shall also be liable jointly and severally with and to the same extent as such controlled person ..., unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.
>
> 15 U.S.C. § 77*o.*

lants contend that Painter is liable under the same statutes and for the same reasons that Titan is, because Painter employed Wilkowski, the fraud was committed in Painter's office, a Painter employee reviewed orders for securities sales before forwarding the paperwork to Titan, and Painter held "open houses" at which Painter's clientele were introduced to Wilkowski and the securities business. Thus, appellants contend, Painter is liable *as though it were a broker-dealer.*

 We affirm summary judgment in favor of Painter on appellants' federal securities claims based on §§ 10(b) and 15 of the 1934 Act and on § 17(a) of the 1933 Act. With respect to appellants' claims attempting to hold Painter vicariously liable under § 20(a) of the 1934 Act and § 15 of the 1933 Act, the district court properly granted summary judgment to Painter. Painter is not a registered broker-dealer, nor does it engage in the sale of securities. Accordingly, Painter cannot be considered a controlling person under our analysis in Part III above. Appellants have cited no evidence that Painter exercised actual "power and influence" over Wilkowski's actions in embezzling funds. Thus, we hold that appellants have failed to raise a triable issue of material fact under either § 20(a) or § 15.[33]

### CONCLUSION

We AFFIRM the district court's order granting summary judgment in favor of Painter on all federal claims and dismissing all state law claims against Painter. We AFFIRM summary judgment as to Titan on all federal claims except for appellants' claims that Titan is secondarily liable under § 20(a), § 15, and respondeat superior for

---

**33.** Appellants did not appear to raise nor did the district court address the question of Painter's alleged liability under a theory of respondeat superior, and therefore, we do not reach the question at this time.

**34.** Appellees' request for attorney's fees on appeal is denied. This appeal plainly cannot be characterized as frivolous within the meaning of Fed.R.App.P. 38.

**1.** It also appears that the remarks regarding "organizational dummies" were primarily addressed to section 20(b), not section 20(a). The former section provides:

Wilkowski's violations of federal securities laws. Accordingly, we VACATE the district court's order dismissing pendent state claims against Titan.[34]

CYNTHIA HOLCOMB HALL, Circuit Judge with whom RYMER, Circuit Judge, joins dissenting:

I concur in all but section IV of the majority opinion. I would hold that section 20(a) of the Act, which already imposes vicarious liability upon all employers for the fraudulent acts of their employees, precludes the grafting of the common law doctrine of respondeat superior onto a federal securities law action. The inclusion in the securities laws of statutory provisions which expressly impose controlling person liability indicates that Congress intended to exclude other forms of vicarious liability. If we impose secondary liability under respondeat superior upon Titan for Wilkowski's rule 10b–5 fraud, we effectively nullify the exculpatory provision of section 20(a) as well as the scienter element of a 10(b) claim. The majority bases its holding on an analysis of the legislative history behind section 20(a) and on policy arguments regarding the remedial nature of the Act. *Majority opinion* at 1577–1578. Both of these arguments are unpersuasive for a number of reasons.

A more comprehensive examination of the legislative history behind section 20(a) reveals the majority's conclusion to be somewhat facile. While preventing "dummy" corporations from escaping liability under the Act may have been one reason for the enactment of section 20(a) (*see majority opinion* at 1577),[1] its primary pur-

---

It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this title or any rule or regulation thereunder through or by means of any other person.

Securities Exchange Act of 1934 § 20(b), 15 U.S.C. § 78t(b) (1976).

When referring to the two sections, the report of the Committee on Interstate Commerce stated that section 20(a) makes "a person who controls a person ... liable to the same extent as the person controlled unless the controlling person acted in good faith and did not induce the

pose was to limit securities fraud liability to those whose conduct is in some sense culpable. Section 20(a) was modeled upon section 15 of the Securities and Exchange Act of 1933.[2] Hearings on S.Res. 84 (72d Cong.), S.Res. 56 and 97 (73d Cong.) Before the Senate Comm. on Banking and Currency, 73d Cong., 1st Sess. 6571 (1934). Section 15 originally made controlling persons liable under Securities Act section 11 (imposing liability for untrue or misleading statements in a registration statement on issuer, underwriter and others involved with the registration statement) and section 12 (imposing liability on sellers of unregistered securities or of securities sold by means of untrue or misleading statements) jointly and severally with the controlled person to anyone to whom the controlled person was liable. 1933 Act, ch. 38, § 15, 48 Stat. 84. Congress specifically rejected the notion of insurer liability under this 1933 Act. As we noted in *Christoffel v. E.F. Hutton & Co.*, 588 F.2d 665, 668 (9th Cir.1978):

> Legislative history reveals that the Senate and the House had advocated differ-

ent versions of the standard that should govern controlling persons. The House proposed that the standard should be a "fiduciary standard," which would require a duty of due care. (H.R.Rep. No. 85, 73d Cong., 1st Sess. 27 (1933); H.R. Rep. No. 152, 73d Cong., 1st Sess. 27 (1933).) On the other hand, the Senate proposed an "insurer's liability" (S.Rep. No. 47, 73d Cong., 1st Sess. 5 (1933), the Fletcher Report). Congress enacted the House version, rejecting the insurer concept.

*Id.* at 668.[3]

Furthermore, the comments to section 20(a) made by Representative Rayburn, the then-Chairman of the House Committee on Interstate and Foreign Commerce, show that employers were meant to fall within that section, and thus be given the protection of the good faith defense. Rep. Rayburn's statement, contained in both House Report and made on the floor of the House, includes "agency" among other forms of legal relationships under the rubric "control."[4] *See generally* D. Fischel,

act in question." 78 Cong.Rec. 7709 (1934). In discussing section 20(b), the Committee noted that that section "makes it unlawful for any person to do, through any other person, anything that he is forbidden to do himself." *Id.*

2. Securities Exchange Act of 1934 § 20(a), 15 U.S.C. § 78t(a) (1976) provides:

Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Securities and Exchange Act of 1933 § 15, as amended, 15 U.S.C. § 77o (1976) provides:

Every person who, by or through stock ownership, agency, or otherwise ... controls any person liable under section 77k or 771 of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

3. Congress made the good-faith defense even more clear one year later. The Act which enact-

ed the 1934 Act amended Section 15 of the 1933 Act by adding the clause at the end reading "unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." H.R.Conf.Rep. No. 1838, 73d Cong., 2d Sess. 42 (1934). *See supra*, n. 2. As Senator Fletcher explained, "the purpose of this amendment is to restrict the scope of the section so as more accurately to carry out its real purpose. The mere existence of control is not made a basis for liability unless that control is effectively exercised to bring about the action upon which liability is based." 78 Cong.Rec. 8185 (1934).

4. In this section and in section 11, when reference is made to "control", the term is intended to include actual control as well as what has been called legally enforceable control.... It was thought undesirable to attempt to define the term. It would be difficult if not impossible to enumerate or anticipate the many ways in which actual control may be exerted. A few examples of the methods used are stock ownership, lease, contract, and agency.

78 Cong.Rec. 7709 (1934) (daily ed. April 30, 1934 statement of Representative Rayburn); *accord* H.R.Rep. No. 1383, 73d Cong., 2d Sess. 26 (1934).

*Secondary Liability Under Section 10(b) of the Securities Act of 1934,* 69 Cal.L.Rev. 80 (1981) for an in-depth review of the legislative history behind the Act.

Finally, the majority's reading of the legislative history is illogical. On the one hand, the majority contends, Congress was so concerned with organizational "dummies" set up for the sole purpose of avoiding the antifraud provisions of the Act that it enacted section 20(a) and (b) just to catch them. At the same time, however, the majority suggests that Congress deliberately gave these "dummy" organizations a good faith defense which it denied to ordinary controlling persons such as lawful employers.

To hold an individual liable for securities fraud committed by his employee without proof of fault, in addition to being contrary to the position of Congress established in its legislative history, would violate the express language of the Act. Section 20(a) extends the good faith defense to employers, and nowhere is there an express statutory provision for expanding employer liability under respondeat superior. Section 10(b) prohibits manipulative or deceptive practices, but does not provide that it shall also be unlawful to employ a person who engages in such practices. When engaging in statutory interpretation, recent Supreme Court cases mandate that the courts consider only the actual language of the statute to divine Congressional intent, and not general principles of tort law or public policy. An analogy to those cases concerning when a private right of action is implied in federal securities cases is instructive. In *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979), the Court held that the lower court's reliance on tort principles to sustain a private cause of action under section 17(a) of the Securities Exchange Act of 1934 was "entirely misplaced." The Court stated that "[t]he invocation of the 'remedial pur-

poses' of the 1934 Act is ... unavailing. Only last Term we emphasized that generalized references to the 'remedial purposes' of the 1934 Act will not justify reading a provision 'more broadly than its language and the statutory scheme reasonably permit.'" *Id.* at 578, 99 S.Ct. at 2490. *See also Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (Court refused to imply a private damage remedy under section 201 of the Investment Advisers Act of 1940, holding that a court should not consider "the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute.").[5] Thus the majority's broad interpretation of the statute in order to protect the public more comprehensively (*majority opinion* at 1578) should be rejected.

Furthermore, the requirement of culpability underlying section 20(a) and the Act in general would be vitiated by the use of respondeat superior.[6] This policy is exemplified by Congress' refusal to place insurer's liability on brokerage firms when it enacted section 15 of the 1933 Act and section 20(a) of the 1934 Act. In addition, the Supreme Court, while never expressly addressing the precise question presented here, nevertheless has held that a Rule 10b–5 violation requires scienter, and assumed that all controlling persons are entitled to the protection of the good faith defense. In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976), the Court held that each liability provision of the 1934 Act "contains a state-of-mind condition requiring something more than negligence." The Court further noted that "§ 20, which imposes liability upon 'controlling person[s]' for violations of the Act by those they control, *exculpates* a defendant who 'acted in good faith and did not ... induce the act ... constituting the violation....'" *Id.* at

---

5. The Court, while never facing the issue directly, has stated that the existence of an implied private right of action under section 10(b) is "well established." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 196, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976).

6. This requirement is not abridged by the use of aiding-and-abetting or conspiracy rules, because both of those theories, at least as they are employed under the federal securities laws, still require culpability on the part of the "secondary" defendant.

209 n. 28, 96 S.Ct. at 1388 n. 28. (emphasis added).[7]

Respondeat superior, on the other hand, is a strict liability doctrine. *See* Restatement (Second) of Agency § 219 (1958) (stating that employees are servants, and a master is responsible for the torts of his servant when the torts are done while the servant is acting within the scope of his employment). The only inquiry under the doctrine of respondeat superior is whether the individual's fraudulent act was committed within the scope of his employment;[8] any discussion of good faith, negligence, or a duty to supervise is irrelevant. As one of the major treatises on the subject recognizes:

> Vicarious liability ... is imposed ... in cases where the master has taken all the steps that reasonable foresight would suggest, including those which involve the exercise of control. Indeed, the court is not even interested in hearing whether the master exercised his right of control well and prudently.

F. Harper & F. James, Jr., *The Law of Torts* 1367 (1956).

In common actions like the present one based upon misrepresentation by employees in connection with the purchase and sale of securities, a broker-dealer will virtually never be able to prove that such a representation was made outside an employee's scope of employment. *See, e.g., Holloway v. Howerdd,* 536 F.2d 690 (6th Cir.1976) (trial court concluded firm had met good faith defense but appellate court found firm vicariously liable for fraud of employee anyway as the brokerage firm "must be clearly disassociated from [the

unlawful transactions] as otherwise it will incur liability on the basis of respondeat superior ...."). Holding broker-dealers secondarily liable under the common law doctrine of respondeat superior would render superfluous section 20(a), for they would be responsible despite their having fulfilled a stringent good faith test based on their having maintained and enforced reasonable and proper supervision and internal controls. *See generally* W. Fitzpatrick & R. Carman, *Respondeat Superior and the Federal Securities Laws: A Round Peg In a Square Hole,* 12 Hofstra L.Rev. 1 (1983).

Section 28(a) of the 1934 Act[9] does not say otherwise. This section merely expresses Congress' intent not to preempt state or common law claims based on the same facts underlying the federal claims; it does not authorize courts to engraft inconsistent state or common law rights and remedies into this new federal securities fraud claim created, defined, and limited by the Act. As Representative Rayburn explained, "this subsection reserves rights and remedies existing *outside* of those provided in the act." 78 Cong.Rec. 7709 (1934). *See also Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 738 n. 9, 95 S.Ct. 1917, 1927 n. 9, 44 L.Ed.2d 539 (1975) (where the Court did not allow a plaintiff who had been offered, but had not purchased, a security to maintain a cause of action under Rule 10b–5, but stated that under The Securities Exchange Act of 1934, § 28(a), a non-purchaser may have a cause of action under state law). Thus this section was not intended to engraft common law concepts into the provisions of the

---

**7.** Most courts have since held that failure to supervise constitutes recklessness and thus meets the scienter requirement, because of the high obligation owed by brokerage firms based upon their fiduciary role. *See, e.g., G.A. Thompson & Co. v. Partridge,* 636 F.2d 945, 959 (5th Cir.1981) ("Liability based upon failure to supervise suggests recklessness...."); *Carpenter v. Harris, Upham & Co.,* 594 F.2d 388, 394 (4th Cir.), *cert. denied,* 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979); *Zweig v. Hearst Co.,* 521 F.2d 1129, 1135 (9th Cir.1975).

**8.** It is sufficient if an agent was acting in what reasonably appeared to the third party to be in

the scope of his employment, under the doctrine of apparent authority. *See* Restatement (Second) of Agency § 265 (1958). Apparent authority liability is imposed even when the agent was acting solely for his own purposes, unless this is known to the person with whom the agent is dealing. *Id.* § 262.

**9.** Section 28(a) of the 1934 Act, 15 U.S.C. § 78bb (1976), provides in pertinent part:

> The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity.

Act itself. Rather, the common law doctrine of respondeat superior can still apply where the predicate offense giving rise to vicarious liability is created by state law, such as in a tort-based fraud action.

While I realize that several other circuits have reached the opposite conclusion on this issue, there is not as strong a consensus as the majority suggests.[10] *Majority opinion* n. 26. As the majority admits, there is some confusion over what the law is in the Fourth Circuit. *See Carpenter v. Harris, Upham & Co.*, 594 F.2d 388, 394 (4th Cir.) (court found that Congress intended civil liability of sellers of securities to be premised on scienter, thus the employer in this case, though a controlling person, is not liable for the securities violation of its employee because it adequately supervised him), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979); *Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303 (E.D.Va.1981) (court held that the common law doctrine of respondeat superior and vicarious liability under section 20(a) cannot sensibly or fairly operate concurrently, and since Congress has specifically granted the broker-dealer the good faith defense contained in section 20(a) it is the exclusive standard of liability).

*Holloway v. Howerdd*, 536 F.2d 690 (6th Cir.1976), upon which the majority rely for the proposition that the Sixth Circuit holds that section 20(a) supplements respondeat superior, can be as easily read to support the dissenting position. Although not completely clear from the opinion, it appears that the court applied respondeat superior to a common law cause of action, not to a federal securities violation. "The use of the doctrine of respondeat superior to impose liability on TSI must be predicated on a finding that Tucker engaged in some illegal activity. The District Judge imposed liability on TSI on the basis that its employee, Tucker, was guilty of fraud and misrepresentation in his sale of Modular

shares." *Id.* at 695. This interpretation is bolstered by the court's refusal to award attorney's fees to the plaintiff. "Liability has been imposed on TSI under the common law doctrine of respondeat superior for the misdeeds of its agent; however, *TSI has been absolved of any liability arising under the Securities Act of 1933 itself.* Therefore the statutory authorization for an award of attorney's fees [15 U.S.C. § 77k(e)] cannot be applied because the liability of TSI does not originate in the Act but in the common law." *Id.* at 697 (emphasis added). *See also SEC v. Washington County Util. Dist.*, 676 F.2d 218, 224 n. 11 (6th Cir.1982), ("In essence, the Commission, in *Coffey*, attempted to hold King liable on the basis of respondeat superior. We refused to impose liability on that theory. *Coffey*, 493 F.2d at 1315. *Accord, Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 880, 886 (3d Cir.1975); *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.1975.)").

Though it is true that the First, Second, Third, Eighth and Tenth Circuits hold to the contrary, we are not, of course, bound by those decisions. Following the letter of the statute and allowing a broker-dealer his good faith defense in no way diminishes his obligation under the Act. He is still accountable, both administratively to the Commission and civilly to the public, for his misdeeds and failure to supervise his employees. The public is well protected by state, federal, and common law without subjecting employers to insurer liability for acts they did not commit and could not have reasonably anticipated or guarded against. Therefore, I respectfully DISSENT.

---

**10.** The Third Circuit has held that generally respondeat superior may *not* serve as a basis for secondary liability under Rule 10b–5, but carves out an exception for broker-dealers and accounting firms. *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 181 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982).

The Seventh, Eleventh, and District of Columbia Circuits have apparently not spoken on this issue.