21 F.3d 1112
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert DIAZ, M.D.; Gerald Phaneuf; William Salsburg;
George Herman, Plaintiffs/Counter-defendants/Appellants,
v.
CENTURY PACIFIC INVESTMENT CORPORATION; Irwin Jay Deutch;
Price Waterhouse, Defendants/Counter-Claimants/Appellees.
 No. 92-56409.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 10, 1994.
Decided April 22, 1994.
 
 Before: Chief Judge WALLACE, FARRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs Robert Diaz et al. appeal the district court's grant of summary judgment in favor of defendant Price Waterhouse on plaintiffs' securities fraud claims under Sec. 10(b) of the Securities Exchange Act, 15 U.S.C. Sec. 78j(b). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We review the district court's grant of summary judgment de novo. Jones v. Union Pac. R.R. Co., 968 F.2d 937, 940 (9th Cir.1992).
 
 I. Price Waterhouse's Statements
 
 3
 Each of PW's opinion letters concluded that "the underlying assumptions provide a reasonable basis for the General Partners' projection. However, some assumptions inevitably will not materialize and unanticipated events and circumstances may occur; therefore, the actual results will vary from the projection and the variations may be material." Plaintiffs contend that this statement is actionable under Sec. 10(b) of the Exchange Act.
 
 
 4
 Rule 10b-5 makes it unlawful to "make any untrue statement of fact or to omit to state a material fact necessary to make the statements made, in light of all the circumstances in which they were made, not misleading." In re Apple Computer Securities Litigation, 886 F.2d 1109, 1113 (9th Cir.1989). In Apple Computer, we explained that projections and statements of belief contain the following three implicit factual assertions: "(1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement." Id.; see also Hanon v. Dataproducts Corp., 976 F.2d 497 (9th Cir.1992). A projection is actionable to the extent that one of these three implied factual assertions is inaccurate.
 
 
 5
 Plaintiffs do not dispute that PW "genuinely believed" the statements it made in its opinion letters. Plaintiffs contend, however, that PW 1) recklessly represented key assumptions of the general partners' projections as reasonable and 2) ignored "facts" that squarely contradicted those assumptions. We reject the argument.
 
 A. Opening Date
 
 6
 The Pannell Kerr and Forster market study assumed that the Roosevelt Hotel would reopen in early 1985. That fact was disclosed in the private placement memoranda. Plaintiffs failed to demonstrate how a late opening date made PW's reliance on the PKF market study unreasonable or how it undermined PW's assertion that the general partners' projections were reasonable.
 
 B. Marketing
 
 7
 Plaintiffs contend that an underlying assumption of the PKF study was that 45% of the hotel's customers would be foreigners with tour groups and that a "marketing department" should be established prior to the hotel's opening in order to tap into that market. The Laventhol & Horwath study assumed there would be "aggressive programs in advertising and sales promotion" prior to opening and throughout the hotel's operation. The record contains a PW workpaper showing that PW cross-checked the Roosevelt Hotel's pre-opening marketing projections.
 
 
 8
 Plaintiffs' expert witness, John Love, stated that PW should have examined actual or intended bookings. At his deposition, however, Love conceded that while he was an employee of PKF, "all of the work which [he] did ... was preparation of projections, not review of other people's projections in the sense that [sic] AICPA[1] place down [sic] guidelines for review of other people's work." Love's testimony does not raise a genuine issue of material fact regarding the extent to which PW should have investigated the hotel's marketing activities in order to confirm the reasonableness of the general partners' projections.
 
 C. Competent and efficient management
 
 9
 Plaintiffs argue that the PKF study assumed the hotel would have competent and efficient management, and that PW made no effort to investigate the competence of management. Plaintiffs have not pointed to any evidence in the record that management was not competent. Further, PW's failure to investigate management's competence did not render its opinion relating to the general partners' projections unreasonable.
 
 D. Chain Affiliation
 
 10
 The L & H study assumed that the hotel would be affiliated with the Radisson chain, and would therefore benefit from the Radisson's extensive "group marketing and national reservation system." Plaintiffs contend that PW knew the hotel would not be affiliated with Radisson, but nevertheless relied on the L & H study. Plaintiffs' contention only relates to the Class C offering since the L & H study was released after the Class A and B offerings.
 
 
 11
 The private placement memorandum relating to the Class C offering specifically stated that the general partners relied on the conclusions in the L & H study, that the L & H study assumed there would be franchising, and that the hotel had not been franchised as contemplated. The general partners further explained that "the Market Study results have, in general been moved back by one year, i.e., 1986 Market Study results will occur in 1987."
 
 
 12
 PW's opinion letter states, in effect, that there was a reasonable basis for the general partners' assumption that the hotel would become a franchisee one year later than predicted in the L & H study. Plaintiffs have introduced no evidence that PW's assumption was unreasonable, or that it was aware of undisclosed facts undermining the accuracy of its assumption.
 
 E. The Other Hotel
 
 13
 Plaintiffs maintain that PW ignored a report in the Los Angeles Times that a 400 room hotel was to be built across the street from the Roosevelt Hotel. The record contains no evidence that PW was aware of this report, and plaintiffs have not shown that PW's unawareness of the report was unreasonable.
 
 F. Actual Results
 
 14
 Plaintiffs augue that PW did nothing to determine whether the "outdated" PKF study's projections were reasonably based in fact. In support of this contention, plaintiffs cite certain "admissions" in the deposition of Robert Keenan, a PW partner who supervised PW's review of the general partners' projections.
 
 
 15
 Plaintiffs reference the following passage in the Keenan deposition:
 
 
 16
 Q. For the operating of the Hollywood Roosevelt Hotel, what supporting documents other than the [PKF] study did you have prior to 1985?
 
 
 17
 A. I don't believe we had any other supporting documents.
 
 
 18
 (emphasis added). The general partners' projections related to operating results during and after 1985. Thus, the above passage is irrelevant. The other excerpts of record cited by plaintiffs also fail to support plaintiffs' contention that PW ignored actual results. The record contains a document showing that PW compared the hotel's actual operating results during the first six months of 1986 with the 1986 cash projection and concluded that the variance was immaterial.
 
 
 19
 G. Failure to mitigate "known risk"
 
 
 20
 Finally, plaintiffs argue that PW's statements were unreasonable because PW knew that the projections prepared by one of the general partners, Century Pacific Investment Corporation, were risky. Plaintiffs rely on an internal PW memorandum for this proposition. That memorandum states PW considered the financial accounting strength of Century Pacific to be "high risk." The memorandum goes on to outline certain review procedures PW accountants should take to mitigate the risk.
 
 
 21
 Plaintiffs do not cite to any specific evidence in the record in support of their assertion that these review procedures were not followed; rather, they rely on the absence of evidence that the review procedures were followed. The affidavit of Robert Keenan suggests that PW's internal review procedures were followed. Plaintiffs have not raised a genuine issue of material fact.
 
 H. Conclusion
 
 22
 Under the standard set forth in Apple Computer, plaintiffs have not introduced sufficient evidence to raise a genuine issue of material fact as to whether PW's opinion letter was misleading.
 
 II. Scienter
 
 23
 Although scienter is a fact specific issue ordinarily left to the trier of fact, courts will grant summary judgment in appropriate cases. Apple Computer, 886 F.2d at 1113. Plaintiffs recognize that PW did not intend to mislead them. They contend, however, that PW was reckless. Reckless conduct is defined as
 
 
 24
 a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.
 
 
 25
 Hollinger v. Titan Capital Corp., 914 F.2d 1564 (9th Cir.1990), cert. denied, 499 U.S. 976 (1991).
 
 A. AICPA Guidelines
 
 26
 Plaintiffs argue that PW's conduct departed from the standard of care applicable to members of the accounting profession. The standard of care applicable to the rendering of an accountant's report is established by applicable professional guidelines. Admiralty Fund v. Hugh Johnson & Co., 677 F.2d 1301, 1313 n. 15 (9th Cir.1982). The American Institute of Certified Public Accountants has issued guidelines for review of financial forecasts and projections. Those guidelines provide, in pertinent part, that an accountant
 
 
 27
 should evaluate whether management's assumptions relate to all key factors upon which the entity's results depend. In evaluating the assumptions the accountant should consider the relevance and overall completeness of the factors identified as well as risks inherent of the business, the sensitivity of the forecast to variations in particular factors, and the pervasiveness of the particular factors in the various assumptions.
 
 
 28
 ....
 
 
 29
 Having satisfied himself that the key factors have been identified and included in the assumptions, the accountant should evaluate whether the assumptions are suitably supported. In his evaluation, the accountant should consider the assumptions in the aggregate as a basis for the forecast. If certain assumptions have no material impact on the forecast, they may not have to be individually evaluated. Nonetheless, the accountant should consider the aggregate impact of individually insignificant assumptions in evaluating whether the assumptions are reasonable.
 
 
 30
 Had PW completely ignored the non-occurence of material assumptions in the market studies, its conduct arguably could be considered reckless under Hollinger. The material assumptions were not ignored. The Class A and B private placement memoranda made clear that the hotel did not open in early 1985, and, in any event, plaintiffs have not introduced evidence that the opening date was a material assumption. PW introduced evidence that it had cross-checked figures relating to pre-opening marketing and that it had compared the hotel's actual results to its projected results. The general partners' projection relating to the Class C offering specifically stated that certain key assumptions of the L & H study, including chain affiliation and adequate marketing, had not yet occurred and that the projected results in the L & H market study had been moved back by one year. Finally, PW's opinion letter specifically warned that material variations from the projections could occur.
 
 
 31
 The district court did not err in holding that although "PW's acts might amount to simple, or perhaps even inexcusable negligence, as a matter of law they were not highly unreasonable omissions amounting to an extreme departure from the standards of ordinary care which presented a danger of misleading buyers that ... is so obvious that PW must have been aware of it."
 
 B. Treasury Circular 230
 
 32
 Plaintiffs also argue that PW recklessly failed to comply with the standard of care set forth in Treasury Circular 230, 31 C.F.R. Part 10. The Circular provides in part that a practitioner who provides a tax shelter opinion "must make inquiry as to all relevant facts, be satisfied that the material facts are accurately and completely described ... and assure that representations as to future activities are clearly identified, reasonable and complete." 31 C.F.R. Sec. 10.33(a)(1). The Circular also states that "a practitioner need not conduct an audit or independent verification of the asserted facts, or assume that a client's statement of the facts cannot be relied upon, unless he/she has reason to believe that any relevant facts asserted to him/her are untrue." Id.
 
 
 33
 These standards of conduct are similar to those contained in the AICPA guidelines. Treasury Circular 230 does not raise a genuine issue of material fact as to whether PW was reckless.
 
 C. Reliance on studies of other accountants
 
 34
 Plaintiffs also argue that PW was reckless because it relied on PKF and L & H as specialists even though applicable professional guidelines prohibited use of accounting firms as specialists. Plaintiffs do not specify which guidelines they are referencing. AICPA guidelines allow accountants to rely on specialists. The AICPA guidelines do not prohibit an accountant from relying on another accountant as a specialist in a field other than accounting. PW relied on PKF and L & H as specialists in the preparation of market studies--it did not do so improperly. AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 American Institute of Certified Public Accountants